UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
07-CV-3979(JMR/FLN)

Timothy J. Jorgenson            )
                                )
          v.                    )            ORDER
                                )
Qwest Corp.                     )

     Plaintiff, Timothy J. Jorgenson, claims defendant, Qwest
Corporation, engaged in age discrimination, retaliation, and breach
of contract when it terminated his employment.  Plaintiff further
claims Qwest breached a grievance settlement between him and his
Union.  Qwest moves to dismiss the complaint claiming plaintiff
released his claims for age discrimination and retaliation in the
course of the grievance settlement.  Qwest further argues
plaintiff's breach of contract claim is preempted by § 301 of the
Labor Management Relations Act, or, alternatively, is barred by the
statute of limitations.  Qwest's motion to dismiss is granted.

I.  Background[1]

     Plaintiff was employed by Qwest as a network technician until
his termination on October 27, 2005.  He was 49 years old at the
time.  According to plaintiff, in 2003, his supervisor began
treating him differently from younger employees.  He claims his

_____

     [1]The facts as stated in this Opinion are based solely on the
complaint or documents referenced in the complaint.  See Parnes v.
Gateway 2000, Inc., 122 F.3d 539, 546 n.9 (8th Cir. 1997).  These
facts are accepted as true, and all reasonable inferences are drawn
in plaintiff's favor.  Maki v. Allete, Inc., 383 F.3d 740, 742 (8th
Cir. 2004).

supervisor monitored his performance more closely than that of younger co-workers, and told him he "was not as fast as the younger guys"; that he was "getting too old and needed help from the younger guys"; and that he was "getting bald and going gray." (Compl. ¶ 11.)  Plaintiff further claims Qwest required network technicians to complete an artificially high number of jobs each day, forcing employees to work overtime without compensation, which plaintiff refused to do.

When plaintiff received notice of his termination, he filed a grievance with the Communication Workers of America Union, which had a collective bargaining agreement ("CBA") with Qwest.  The grievance procedure worked, and the grievance was resolved when plaintiff, Qwest, and the Union signed a "Settlement Agreement, Release, and Waiver."  As part of the settlement, the parties agreed Qwest would reinstate plaintiff to the position of load specialist upon successful completion of the Multipath Core Battery Test and the Network Behavioral Interview.  In exchange, plaintiff agreed to the following release:

> Grievant [plaintiff], as a free and voluntary act, hereby forever releases and discharges Qwest from, and covenants not to sue Qwest for, any claims which grievant might have or assert against Qwest by reason of grievant's employment with Qwest through the effective date of this agreement. . . .  With respect to any charges filed with any federal, state or local agency, pending or otherwise, arising from or related to grievant's employment or termination of employment with Qwest, grievant acknowledges that grievant knowingly and voluntarily waives his right to seek individual relief on his own behalf.

(Agreement § III(C).)

Another provision of the Agreement specifically states: "[t]his release means, in part, that grievant gives up all rights to damages and/or money based upon any claims against Qwest of age discrimination that arise through the date this agreement is signed." (Agreement § IV(E).) The Agreement was signed by plaintiff on August 1, 2006; by the Union representative on August 2, 2006; and by Qwest's labor relations manager on August 7, 2006.

Thereafter, plaintiff took the Multipath Core Battery Test. On his first attempt, he claimed the computers did not function properly. The test was rescheduled. The second time, plaintiff again claimed the computers malfunctioned. He then contacted his Union representative who told him Qwest would not permit a third attempt, and would not, therefore, reinstate his employment.

Plaintiff filed his discrimination charge with the Minnesota Department of Human Rights ("MDHR") on October 19, 2006. He received his right to sue notice from the MDHR on July 2, 2007, and filed this action in Hennepin County District Court on August 15, 2007. He claims age discrimination in Count I, in violation of the Age Discrimination in Employment Act ("ADEA"), the Minnesota Human Rights Act ("MHRA"), and Minn. Stat. § 181.81; retaliation in Count II, in violation of the Fair Labor Standards Act and Minnesota state law equivalents; and breach of contract in Count III. Qwest timely removed the case to federal court, and now seeks dismissal.

3

II.  <u>Analysis</u>

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, under the Federal Rules of Civil Procedure, the Court construes the complaint in the light most favorable to the non-moving party.  <u>Burton v. Richmond</u>, 276 F.3d 973, 975 (8th Cir. 2002).  "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Stodghill v. Wellston School Dist.</u>, 512 F.3d 472, 476 (8th Cir. 2008) (citations omitted). The complaint must set forth factual allegations sufficient to "raise a right to relief above the speculative level."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007).

Rule 12(b)(6) permits dismissal for failure to state a claim based on the statute of limitations if it appears from the face of the complaint that the statute of limitations has run.  <u>Varner v. Peterson Farms</u>, 371 F.3d 1011, 1016 (8th Cir. 2004).

A.  <u>Discrimination and Retaliation Claims</u>

Qwest contends plaintiff surrendered his right to sue for age discrimination and retaliation as part of the Settlement Agreement.  Plaintiff responds that, because Qwest breached the Agreement by refusing to accommodate his test-

4

taking,[2] he is not bound by the Agreement's release.   Plaintiff offers no law in support of this assertion.

In general, courts look favorably upon settlements and presume a release of claims is valid.   See Davis v. Flatiron Materials Co., 511 P.2d 28, 32 (Colo. 1973).[3]   The validity of a settlement agreement is determined as a matter of law using general rules of contract construction.   See Bumbal v. Smith, 165 P.3d 844, 845 (Colo. App. 2007); Rocky Mountain Ass'n of Credit Management v. Hessler Mfg. Co., 553 P.2d 840, 842 (Colo. App. 1976).   When a written contract is unambiguous, the parties' intent must be determined by looking at the contract itself and the terms enforced as written.   Montemayor v. Jacor Communications, Inc., 64 P.3d 916, 920 (Colo. App. 2002).   Breach of contract alone does not render the contract void; something more is needed that calls into question the parties' consent to the agreement at the time it was made.   See Lake Durango Water Co., Inc. v. Public Utilities Comm'n of Colo., 67 P.3d 12, 20 (Colo. 2003).   For example, a court may find a contract void

---

[2]Plaintiff now acknowledges the statute of limitations has passed on his ADEA age discrimination claim, and that he has failed to exhaust his administrative remedies with the Equal Employment Opportunity Commission.   (Pl.'s Opp. Mem. 4 n. 1.)   He persists, however, in his age discrimination claim brought pursuant to the Minnesota Human Rights Act.

[3]The settlement agreement specifies that the terms of the contract are be interpreted pursuant to Colorado law.   (Agreement § IV(C).)

where there is undue influence, mutual mistake, fraud, or duress, all circumstances which are not present here.  Id.

The Court finds this Agreement's release clause is straight-forward and unambiguous.  The language clearly manifests the parties' intent; plaintiff explicitly agrees to release his right to pursue claims related to his employment and termination, including the claims for age discrimination and retaliation made here, in exchange for the possibility of reinstatement.

Under the terms of the Agreement, plaintiff's release was complete and binding upon execution of the contract; there is no language or evidence that the Agreement was conditioned on future performance by either party.  Plaintiff is not entitled to rescission of the Agreement even if, as he claims, Qwest breached its obligation to afford him an opportunity to take the test.  To rescind the Agreement or restore the parties to the status quo, plaintiff would have to show that "there was a substantial breach of contract, that the injury caused by the breach is irreparable, or that damages would be inadequate, difficult, or impossible to assess."  Ralston Oil & Gas Co. v. July Corp., 719 P.2d 334, 339 (Colo. App. 1985).  The Court considers that any harm plaintiff claims by virtue of Qwest's alleged failure to allow him to complete the Multipath Core Battery Test can be remedied by monetary damages. Thus, the Agreement may not be subject to rescission, even if Qwest is found in breach thereof.

In sum, the Court finds the Agreement valid.  Plaintiff is therefore bound by his release and barred from pursuing claims for age discrimination and retaliation.

B.  <u>Breach of Contract Claim</u>

Qwest asks the Court to dismiss plaintiff's breach of contract claim for three reasons: (1) plaintiff's state law claim is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 et seq.; (2) plaintiff is bound by the resolution of his grievance unless he brings a "hybrid" claim, pursuant to § 301, alleging both breach of contract and inadequate representation by his Union; and (3) even if plaintiff adequately pled a § 301 claim, such claim is barred by the six-month statute of limitations.

Plaintiff, again citing no law, opposes dismissal.  He simply denies his claim is subject to federal labor law, contending the Agreement was a private contract he made with his employer.  He ultimately asks the Court to ignore the fact that the Agreement was created pursuant to a CBA, and blind its eye to the fact that his Union was a party to the contract.  Plaintiff cannot prevail.

An employee's breach of contract claim, for a contract arising from circumstances that were or could have been grieved under a collective bargaining agreement, may only be brought pursuant to § 301 of the LMRA.  <u>See</u> <u>DelCostello v. Int'l Brotherhood of Teamsters</u>, 462 U.S. 151, 164-65 (1983); <u>Jones v. General Motors Corp.</u>, 939 F.2d 380, 382 (6th Cir. 1991).  § 301 states:

> Suits for violation of contracts between an employer and
> a labor organization representing employees in an
> industry affecting commerce . . . may be brought in any
> district court of the United States having jurisdiction
> of the parties, without respect to the amount in
> controversy or without regard to the citizenship of the
> parties.

29 U.S.C. § 185(a). State breach of contract claims are preempted

by § 301 when the state claim "is inextricably intertwined with

consideration of the terms of the labor contract," Allis-Chalmers

Corp. v. Lueck, 471 U.S. 202, 231 (1985), or, in other words, "where

the resolution of the state claim substantially depends on the

interpretation of terms or provisions of a collective bargaining

agreement." Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d

1046, 1051 (8th Cir. 2006) (quotations omitted).

Here, plaintiff sought remedy for his claim of wrongful

termination by filing a grievance with his Union pursuant to the

CBA. Qwest, plaintiff, and the Union resolved the grievance in

accord with the CBA. Plaintiff's breach of contract claim rests

squarely on the Settlement Agreement, Release, and Waiver.

The Sixth Circuit, analyzing a claim similar to plaintiff's for

breach of a settlement agreement stated: "The resolution of this

claim will not involve the direct interpretation of a precise term

of the CBA, but it will require a court to address relationships

that have been created through the collective bargaining process and

to mediate a dispute founded upon rights created by a CBA." Jones

v. General Motors, 939 F.2d at 382-83. The Court finds that the

dispute before it is premised on an Agreement entered into and executed pursuant to the CBA.  As such, the Court finds any resolution of plaintiff's claim requires interpretation of the CBA.  See id. at 383.  Plaintiff's state law claim is therefore preempted by § 301.

The Court next asks whether plaintiff's breach of contract claim may be construed as a § 301 claim.  A union employee is ordinarily required to first exhaust all available remedies through his union before bringing suit against an employer.  DelCostello, 462 U.S. at 163.  The employee is then bound by the result of his union's efforts to resolve his complaint.  Id. at 164.  An exception to this rule will arise if the union breaches its duty of fair representation to the employee.  Id. at 165.  In such a case, an employee may bring a "hybrid" claim against either the union or the employer, or both, pursuant to § 301 of the LMRA.

One essential element of a "hybrid" claim is an allegation that the union breached its duty of fair representation to the employee, regardless of whether the union is named as a defendant.  Id. at 165.  Qwest argues plaintiff makes no such allegation in his complaint, and plaintiff therefore fails to state a claim under § 301.  A review of the complaint reveals plaintiff's allegation that his Union "failed to secure an adjustment to these matters" (Compl. ¶ 18), referring to plaintiff's request to have a third opportunity to take the Multipath Core Battery test.  Drawing all inferences in

9

the light most favorable to plaintiff, the Court finds this allegation sufficient to satisfy plaintiff's obligation to plead inadequate representation.

This finding does not save plaintiff, however, as his § 301 claim is clearly barred by the six-month statute of limitations. See Delcostello, 462 U.S. at 169, 170-72 (finding the six-month statute of limitations set forth in § 10(b) of the LMRA applicable to a § 301 hybrid claim). Plaintiff filed a charge of discrimination with the MDHR on October 19, 2006. He admits he knew, prior to that date, that Qwest would not allow him a third opportunity to take the Multipath Core Battery Test. Using October 19, 2006, as the date the statute of limitations began to run, he would have needed to file his breach of contract/inadequate representation claim no later than April 19, 2007. Plaintiff's claim was on August 15, 2007, well past the six-month deadline. Accordingly, even if the Court construes plaintiff's breach of contract claim as an adequately-pled, § 301 hybrid claim, the claim must still be dismissed for failure to comply with the statute of limitations.

IV. Conclusion

For the foregoing reasons, IT IS ORDERED that:

1. Defendant's motion to dismiss [Docket No. 4] is granted.

2. Plaintiff's complaint is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

10

Dated:  May 16th, 2008


                                     s/ James M. Rosenbaum
                                    JAMES M. ROSENBAUM
                                    United States Chief District Judge